```
 1              IN THE UNITED STATES DISTRICT COURT
             FOR THE WESTERN DISTRICT OF TEXAS
 2                      WACO DIVISION

 3   VERVAIN, LLC              *
                              *      November 22, 2022
 4   VS.                       *
                              *      CIVIL ACTION NOS.
 5   MICRON TECHNOLOGY, INC.,*      W-21-CV-487
      ET AL                    *
 6   WESTERN DIGITAL           *      W-21-CV-488
       CORPORATION, ET AL

 7
              BEFORE THE HONORABLE ALAN D ALBRIGHT
 8               DISCOVERY HEARING (via Zoom)

 9   APPEARANCES:

10   For the Plaintiff:  Alan Whitehurst, Esq.
                         Quinn Emanuel Urquhart & Sullivan
11                       1300 I Street, NW, Suite 900
                         Washington, DC 20005
12
                         Christopher Paul McNett, Esq.
13                       McKool Smith PC
                         1717 K Street NW, Suite 900
14                       Washington, DC 20006

15   For Defendant Micron:

16                         Jeremy Jason Lang, Esq.
                           Orrick, Herrington & Sutcliffe LLP
17                         1000 Marsh Road
                           Menlo Park, CA 94025
18
                           Christopher Childers, Esq.
19                         Orrick, Herrington & Sutcliffe LLP
                           1152 15th Street, N.W.
20                         Washington, DC 20005

21                         Parth Sagdeo, Esq.
                           Orrick, Herrington & Sutcliffe LLP
22                         222 Berkeley St., Suite 2000
                           Boston, MA 02116

23

24

25
```

```
 1   For Defendant Western Digital:

 2                       Richard G. Frenkel, Esq.
                         Latham & Watkins LLP
 3                       140 Scott Drive
                         Menlo Park, CA 94025
 4
                         Shaun William Hassett, Esq.
 5                       Potter Minton PC
                         110 North College, Suite 500
 6                       Tyler, TX 75702

 7                       Michael E. Jones, Esq.
                         Potter Minton PC
 8                       110 N College, Suite 500
                         Tyler, TX 75702
 9
     Court Reporter:     Kristie M. Davis, CRR, RMR
10                       PO Box 20994
                         Waco, Texas 76702-0994
11                       (254) 340-6114

12      Proceedings recorded by mechanical stenography,

13   transcript produced by computer-aided transcription.

14

15

16

17

18

19

20

21

22

23

24

25
```

3

01:31  1                    (Hearing begins.)

01:31  2                    DEPUTY CLERK:  A civil action in Cases

01:31  3  6:21-CV-487 and 488, Vervain, LLC versus Micron

01:31  4  Technology, Inc., et al.  Cases called for a discovery

01:31  5  hearing.

01:31  6                    THE COURT:  Mr. Whitehurst, if you could

01:31  7  announce, please.

01:31  8                    MR. WHITEHURST:  Good afternoon, Your

01:31  9  Honor.  Alan Whitehurst from McKool Smith for the

01:31  10 plaintiff Vervain.  And with me today is my colleague

01:31  11 Chris McNett.

01:31  12                   THE COURT:  Welcome.

01:32  13                   MR. WHITEHURST:  Thank you.

01:32  14                   MR. LANG:  Good afternoon, Your Honor.

01:32  15 Jason Lang on behalf of the Micron defendants.  With me

01:32  16 are my colleagues Parth Sagdeo and Chris Childers and

01:32  17 Micron in-house legal representative Anne-Marie Dega.

01:32  18                   And a computer glitch has her picture

01:32  19 showing Byrne.

01:32  20                   THE COURT:  Mr. Jones?

01:32  21                   MR. JONES:  Your Honor, Mike Jones for

01:32  22 Western Digital, together with Rick Frenkel.

01:32  23                   MR. FRENKEL:  Good morning.

01:32  24                   THE COURT:  Have I left anyone out?

01:32  25                   It's everyone I can see on my screen.  Is

4

01:32    1    there anyone else?

01:32    2             MR. LANG:  I think that's all, Your

01:32    3    Honor.

01:32    4             THE COURT:  Very good.

01:32    5             So I'm going to mess you all up a little

01:32    6    bit here, I think, by doing this, but I've looked over

01:32    7    everything.  I'd like to take up the fourth and fifth

01:32    8    issues together and out of order.

01:32    9             The first four -- No. 4 is whether the

01:32   10    Court should order Vervain or Greenthread to produce

01:33   11    purchase price of Greenthread shares when Greenthread

01:33   12    owned the asserted patents, and then whether -- No. 5,

01:33   13    whether the Court should order Vervain or Greenthread

01:33   14    to produce the purchase price of Greenthread shares

01:33   15    when Greenthread owned the asserted patents.

01:33   16             I'm happy to hear from the defendant why

01:33   17    they think at this point they're entitled to that

01:33   18    information.

01:33   19             MR. LANG:  Sure.  And unfortunately,

01:33   20    Ms. Dega, this will be a time you'll have to leave the

01:33   21    hearing.

01:33   22             Thank you, Your Honor.  I'll share my

01:33   23    screen here.

01:33   24             And ironically, I actually was going to

01:33   25    ask that we address this issue first because it's very

5

01:33    1    straightforward.

01:33    2                     There was a 10 percent sale of

01:33    3    Greenthread.  So 10 percent of the company was sold.

01:33    4    When that sale occurred, Greenthread owned the asserted

01:34    5    patent and one other group of patents, had no other

01:34    6    operations.  So that 10 percent -- what that 10 percent

01:34    7    of the company sold for reflects the value of the

01:34    8    asserted patent.

01:34    9                     How do we know that, Your Honor?  Well,

01:34   10    Federal Circuit precedent has already held -- this is

01:34   11    the Integra case -- where they had looked at the sale

01:34   12    of a company (audio distortion).  And, in fact, the

01:34   13    Federal Circuit relied on that sale price when they

01:34   14    were looking at the damages award.

01:34   15                     Now, Vervain has said, well, that's

01:34   16    not -- these patent purchases aren't relevant to the

01:34   17    case.  The Court hasn't been ordering production of

01:34   18    those.  That just is not the case, Your Honor.

01:34   19                     This is Vervain's position just since

01:34   20    September of this year.  They said:  Documents

01:34   21    regarding an acquisition involving patents transferred

01:34   22    are relevant for damages purposes.

01:34   23                     And they asked for that for Round Rock.

01:35   24    And what did the Court order with respect to Round

01:35   25    Rock?  It's at the bottom there:  Micron is ordered to

| | | |
|---|---|---|
| 01:35 | 1 | produce any sales documents. |
| 01:35 | 2 | And that's exactly what Micron produced |
| 01:35 | 3 | was the Round Rock sales agreement for patents. |
| 01:35 | 4 | So this is a sale of a company for the |
| 01:35 | 5 | asserted patent.  It's relevant, and Greenthread -- or |
| 01:35 | 6 | Vervain's asked for this themselves and the Court's |
| 01:35 | 7 | ordered this as production. |
| 01:35 | 8 | The next issue is basically the same. |
| 01:35 | 9 | It's a 3 percent sale of the company. |
| 01:35 | 10 | If you have no further questions, Your |
| 01:35 | 11 | Honor, that's all that I have. |
| 01:35 | 12 | THE COURT:  And a response, |
| 01:35 | 13 | Mr. Whitehurst or whoever's going to respond? |
| 01:35 | 14 | MR. WHITEHURST:  Your Honor, we certainly |
| 01:35 | 15 | have not asked for the price put on the minority shares |
| 01:35 | 16 | of a third party.  We believe that -- we struggle to |
| 01:36 | 17 | see how this could possibly be relevant to the |
| 01:36 | 18 | hypothetical negotiation. |
| 01:36 | 19 | We're talking about past corporate |
| 01:36 | 20 | information for a third party, Greenthread.  We're not |
| 01:36 | 21 | talking about the plaintiff here, Vervain. |
| 01:36 | 22 | And when you look at this, the case that |
| 01:36 | 23 | counsel cites to was the purchase price for the entire |
| 01:36 | 24 | company.  That's not what we're looking at here. |
| 01:36 | 25 | The defendants are trying to obtain the |

01:36  1   amount that was paid to two minority shareholders that

01:36  2   had provided some capital and subsequently wanted out

01:36  3   of the company.

01:36  4            So we're talking about a very different

01:36  5   situation here.  This is not like what we dealt with in

01:36  6   the Lexar Media or Round Rock situation, where we're

01:36  7   talking about licenses for comparable patents.  We've

01:36  8   understood the role of the case.  You produce executed

01:36  9   licenses.  We followed that to the letter of the law.

01:36  10           Here, they're trying to get to how much

01:36  11  Greenthread, a third party, paid to two minority

01:37  12  shareholders or in the case of --

01:37  13           THE COURT:  Mr. Whitehurst, I'm sorry.

01:37  14           Mr. Lang, yeah.  If -- I'm sorry to cut

01:37  15  you off, Mr. Whitehurst.

01:37  16           Mr. Lang, I'm trying to figure out what

01:37  17  theory -- I get this is discovery, and I guess you

01:37  18  could argue that, you know, this is -- has some

01:37  19  tangential relevance and that, you know, that if the

01:37  20  plaintiff is unhappy, they can, you know, Daubert,

01:37  21  summary judgment or whatever.

01:37  22           But I'm having a hard time figuring out

01:37  23  what reasonable royalty issue that this would go to.

01:37  24  I'm -- I can't figure out where -- I can't figure out

01:37  25  what these gentlemen -- I'm assuming -- I think they

01:37   1   were both gentlemen.  Let's see --

01:38   2                    MR. WHITEHURST:  There were two in the

01:38   3   2019 time frame, and there was one in the 2013 before

01:38   4   the patents had even issued.

01:38   5                    THE COURT:  Yeah.  Now, let me say this:

01:38   6   Is Dr. Rao, R-a-o, is he an inventor of the patents

01:38   7   that are involved in the case?

01:38   8                    MR. LANG:  Yes, Your Honor.  The sole

01:38   9   inventor.

01:38   10                    THE COURT:  Okay.  So -- okay.  So Mr. --

01:38   11  so if you would, Mr. Lang, tell me what you -- where

01:38   12  you think this is relevant with any of the reasonable

01:38   13  royalty factors, and then I'll hear from Mr. Whitehurst

01:38   14  why providing the information of what the inventor

01:38   15  received would not be relevant.

01:38   16                    MR. LANG:  Okay.  Because the 10 -- it

01:38   17  was a sale for 10 percent of the interest of the

01:38   18  company.

01:38   19                    So from that, you can back out, well, if

01:38   20  you -- if that's just 10 percent, so the full price

01:38   21  would be, you know, 100 percent.  So a damages expert

01:38   22  could back out, well, what would be the value of the

01:39   23  sale of the company at that point?

01:39   24                    And the Federal Circuit absolutely has

01:39   25  said that you can look at this when you compare the

01:39   1   royalty.  In this case, in the Integra case, there is a

01:39   2   $15,000 (sic) royalty that was testified to.

01:39   3            And they compared that to the sale of the

01:39   4   company, which was 20 million.  And the Federal Circuit

01:39   5   concluded, well, the 15 million would therefore not be

01:39   6   a reasonable royalty.

01:39   7            So here, the only math that needs to be

01:39   8   done, Your Honor, is -- Mr. Whitehurst brought up two

01:39   9   things.  Well, it's a third party.  It was a third

01:39   10  party that owned the asserted patent family.  And you

01:39   11  rightly pointed out the issue with Dr. Rao.

01:39   12           So this is the asserted patent, and it's

01:39   13  a sale of 10 percent of the company.  That's true.  But

01:39   14  it's easy to take 10 percent and turn that into 100.

01:39   15  That's just math.

01:39   16           And then you can compare that price to

01:39   17  any royalty that's testified to, as the Federal Circuit

01:39   18  did here.

01:40   19           MR. WHITEHURST:  Your Honor, you can't

01:40   20  take 10 percent and turn it into 100 percent.

01:40   21           The case law that counsel has cited to

01:40   22  was the purchase price for the entire company.  Anybody

01:40   23  that's familiar with basic securities or tax laws knows

01:40   24  that certain percentage, a minority stake of a company

01:40   25  is -- the price is greatly diminished.  So you can't

01:40   1   just multiply it by 10 to get the full price.

01:40   2                   Here, we had two individuals that had

01:40   3   done Dr. Rao a favor, contributed some capital and then

01:40   4   later were hoping to get their capital back because

01:40   5   other circumstances had arisen.

01:40   6                   So to try to look at the value that they

01:40   7   put into the company in contributed capital and then

01:40   8   got back cannot possibly reflect the value of

01:40   9   100 percent of the company where somebody has a

01:40   10  majority ownership and owns the right.  That's just

01:40   11  basic securities tax for closely held corporations.  So

01:41   12  it doesn't work like Mr. Lang has suggested.

01:41   13                  But even greater, the patents hadn't even

01:41   14  issued yet at this time.  In the 2013, none of the

01:41   15  patents had issued.  And in the 2019, the '300 patent

01:41   16  hadn't even issued yet.

01:41   17                  THE COURT:  Mr. Whitehurst -- well, I'm

01:41   18  sorry to interrupt you.  I thought you were done.

01:41   19                  Why isn't the more appropriate course for

01:41   20  me to take here to order the production of this

01:41   21  information to the defendant or defendants, and if they

01:41   22  choose to use it in their damages reports and their

01:41   23  calculations, you can take it up at Daubert; and if

01:41   24  you're right that it's irrelevant, well, then they have

01:41   25  a -- they'll have some problems?

01:41   1              In other words, it seems to me -- and I

01:41   2    get why -- I'm not putting you down for -- if I were in

01:42   3    your -- I say this often.  People ask why I do these

01:42   4    discovery -- you know, these discovery hearings.  And

01:42   5    I've found over the course of my four years, I'd say in

01:42   6    95 percent of them I would have fought over it too on

01:42   7    both sides.  So I'm not -- I think this is a very

01:42   8    legitimate issue.

01:42   9              But it seems to me in the balance of

01:42   10   equities here that what I ordinarily would do is allow

01:42   11   the discovery and -- without any prejudice to your

01:42   12   making the point that you're making and making it

01:42   13   when -- if you're right, then they'll have problems if

01:42   14   they use this information when they do their damages

01:42   15   report.

01:42   16             MR. WHITEHURST:  You know, we have tried

01:42   17   to take the high road in this litigation, you know.  We

01:42   18   understood that only executed licenses was the rule for

01:43   19   the case.  We followed that to the letter of the -- you

01:43   20   know, we followed that very closely.

01:43   21             You know, if you're inclined to allow

01:43   22   this information, and we do intend to Daubert it out

01:43   23   later, we would only request that we be permitted to

01:43   24   provide that in a written interrogatory response form.

01:43   25   Discovery is closing tomorrow.  All the witnesses have

01:43  1    already been deposed.

01:43  2                    THE COURT:  Let me hear from Mr. Lang.  I

01:43  3    don't have a problem with that.

01:43  4                    Do you have an issue with that?

01:43  5                    MR. LANG:  If the -- I guess what I would

01:43  6    ask Your Honor is if we can get the interrogatory and

01:43  7    later request the documents if the interrogatory

01:43  8    response does not provide all the information?

01:43  9                    THE COURT:  I think that's fair to both

01:43  10   sides.  So -- and you can request it.  Mr. Whitehurst

01:43  11   is free to take your request and decide what to do with

01:44  12   it.  And if he decides to oppose it, you all can come

01:44  13   back to me and I can deal with it pretty quickly, I

01:44  14   think.

01:44  15                    So let's -- on No. 4 and No. 5, I'm going

01:44  16   to order the production of this information in the form

01:44  17   of -- let me ask y'all this.  Mr. Whitehurst is saying

01:44  18   he'd like to do that.  Are there actually written

01:44  19   interrogatories which you can answer, Mr. Whitehurst?

01:44  20   Do you need Mr. Lang to send you the -- I mean, (audio

01:44  21   distortion).

01:44  22                    MR. WHITEHURST:  It was actually a

01:44  23   suggestion by Mr. Lang.  So, you know, let me work with

01:44  24   Mr. Lang and Western Digital, see if there is an

01:44  25   appropriate interrogatory.  I believe both sides are at

01:44   1   their limit, but we would allow them to serve an

01:44   2   additional one as a vehicle for providing this

01:44   3   information and avoiding any further deposition.

01:45   4                   THE COURT:  Okay.  So let's do this.  I'm

01:45   5   granting the relief in No. 4 and No. 5.

01:45   6                   Mr. Lang, your burden is to come up

01:45   7   with -- quickly with an interrogatory that will get you

01:45   8   this information and then Mr. Whitehurst can provide it

01:45   9   in that.

01:45   10                   If you are dissatisfied with the

01:45   11   information you get back and feel like you need

01:45   12   additional documents, we can decide -- take that up

01:45   13   later.

01:45   14                   MR. WHITEHURST:  Thank you, Your Honor.

01:45   15                   THE COURT:  Does that work for everyone?

01:45   16                   MR. LANG:  Yes, Your Honor.

01:45   17                   MR. FRENKEL:  Thank you, Your Honor.  On

01:45   18   behalf of Western Digital, we'll work with Micron and

01:45   19   Vervain on that as well.

01:45   20                   THE COURT:  Very good.  And sorry to

01:45   21   leave you out of that discussion.

01:45   22                   MR. FRENKEL:  That's okay.

01:45   23                   THE COURT:  Next up is No. 1, whether the

01:45   24   Court should enforce its October 14th, 2022 order and

01:45   25   require Micron to produce all licenses.

—14—

01:45  1          So I will hear -- I think it's plaintiff

01:45  2     that's asking for this.  So if I'm correct, I'll start

01:45  3     with plaintiff.  But if I'm wrong, I'll start with

01:46  4     defendant.

01:46  5          MR. LANG:  And, Your Honor, one

01:46  6     housekeeping issue.  On these next to two issues, on

01:46  7     Vervain's issues, it involves Micron confidential

01:46  8     information.  So Western Digital counsel would have to

01:46  9     drop, and then we can bring them back on for the

01:46  10    last -- fifth issue, if you'd like to do it that way.

01:46  11         MR. FRENKEL:  That's fine.  Will somebody

01:46  12    e-mail us, I guess, when it's time to come back on

01:46  13    then?

01:46  14         MR. LANG:  I believe Jennifer can just

01:46  15    right now put you to a side room and bring you back.

01:46  16         MR. FRENKEL:  Okay.

01:46  17         THE COURT:  Okay.

01:46  18         (Western Digital exited the hearing.)

01:46  19    ████████████████████████████████████████

01:46  20    ███████████████████████████████████

01:46  21    ████████████████████████████████████

01:46  22    ██████████████████████████████████████████

01:47  23    ████████████████

01:47  24    ███████████████████████

01:47  25    ████████████████████████████████████████████















22



23





25



26



| 02:01 | 1 | |
| 02:01 | 2 | |
| 02:01 | 3 | |
| 02:01 | 4 | |
| 02:01 | 5 | |
| 02:02 | 6 | |
| 02:02 | 7 | |
| 02:02 | 8 | |
| 02:02 | 9 | |
| 02:02 | 10 | |
| 02:02 | 11 | |
| 02:02 | 12 | |
| 02:02 | 13 | |
| 02:02 | 14 | |
| 02:03 | 15 | |
| 02:03 | 16 | |
| 02:03 | 17 | |
| 02:03 | 18 | |
| 02:03 | 19 | |
| 02:03 | 20 | |
| 02:03 | 21 | |
| 02:03 | 22 | |
| 02:03 | 23 | |
| 02:03 | 24 | (Western Digital entered the hearing.) |
| 02:03 | 25 | DEPUTY CLERK:  They're back, sir. |

—27—

02:03  1          THE COURT:  Okay.  Now, we're taking up

02:03  2    Issue No. 3, which is whether the Court should order

02:03  3    Vervain and Greenthread to produce documents regarding

02:03  4    the transfer of the SSD flash patents.

02:03  5          I will let you guys know that I feel

02:04  6    honored that on the final topic I have to take up

02:04  7    before my Thanksgiving vacation begins, I get to spend

02:04  8    this time with you all.  But I certainly want to take

02:04  9    absolutely as much time as you all want to take, I'm

02:04 10    kidding -- I'm not kidding, but I do enjoy all the

02:04 11    lawyers on this hearing.

02:04 12          So I'm -- did any of you -- were any of

02:04 13    you ever -- have the good fortune to appear in front of

02:04 14    Judge Paul Luckern in the ITC?

02:04 15          MR. WHITEHURST:  (Audio distortion).

02:04 16          THE COURT:  So Mr. Whitehurst will know

02:04 17    what I'm talking about.  I had the great good fortune

02:04 18    of appearing in front of him in the late thousands and

02:04 19    late teens.  And he was -- I think the word (audio

02:04 20    distortion) at all and -- great judge.  Absolutely

02:04 21    phenomenal judge.

02:04 22          But on a pretty regular basis, he would

02:04 23    lose his temper, and then he would start screaming at

02:05 24    the lawyers.  And then I guess because he realized he

02:05 25    was on the record, he would start -- he would finish

02:05  1    whatever he yelled at us by saying, but you're all

02:05  2    great lawyers.  Just for the record, you're all great

02:05  3    lawyers.  You're all doing a great job.

02:05  4              And so ever since then, I've laughed when

02:05  5    people said, you're a great lawyer.  You're doing a

02:05  6    great job.  So hopefully people won't describe us in

02:05  7    exactly the same vein.  Mr. Whitehurst would know, and

02:05  8    he'll probably remain silent one way or the other here.

02:05  9              So -- okay.  Let me see here.  Let me

02:05  10   hear from I think -- Mr. Lang, does it make sense for

02:05  11   you to go first?  I think it does.

02:05  12             MR. LANG:  I think so, Your Honor.

02:05  13             And this issue here is largely the same

02:05  14   with one difference than the Issues 4 and 5 that we

02:05  15   addressed first.

02:05  16             And the issue here is, it is true that

02:06  17   this patent -- you know, there was an acquisition here,

02:06  18   as I'll get into here in a second, that it wasn't the

02:06  19   asserted patents.  It was these other patents called

02:06  20   the silicon flash patents.

02:06  21             Now, a couple of notable aspects:  No. 1,

02:06  22   it's the same inventor, Dr. Rao; No. 2, they were owned

02:06  23   by the same company, Greenthread; No. 3, same invention

02:06  24   date, 2007 versus 2011; they relate to the same flash

02:06  25   memory.

02:06  1          I'll test your memory a little bit, Your
02:06  2   Honor, these were also asserted against Micron SSDs in
02:06  3   a case called Flash Control.  That was in front of you.
02:06  4   These patents dealt with moving data around/address
02:06  5   mapping, the same type of techniques that are at issue
02:06  6   here.  In fact, these patents were even offered
02:07  7   together in patent sales.
02:07  8          Now, so -- but in this case, as you know,
02:07  9   Micron's produced dozens and dozens of licenses that
02:07  10  don't cover the asserted patent.  We just talked about
02:07  11  the Round Rock licenses, Lexar licenses, other
02:07  12  licenses.
02:07  13         And as you well know, Your Honor, even if
02:07  14  it's not the asserted patent, a license or patent can
02:07  15  be comparable.  These certainly are the most comparable
02:07  16  of anything we've looked at.
02:07  17         Now, what we know is that from sworn
02:07  18  testimony -- and I'll note for the record, in our table
02:07  19  dispute there is a citation issue where we cited 126:3
02:07  20  through 6.  It actually should be 127.  And, in fact,
02:07  21  that sentence, those citations are one page off.
02:07  22         But what that testimony shows was that
02:08  23  there were some minimal payments made for these
02:08  24  patents.  That's just sworn testimony.  So all we want
02:08  25  to know is how -- what those payments were.

| | | |
|---|---|---|
| 02:08 | 1 | Now, Vervain claims that that's |
| 02:08 | 2 | privileged.  But we'll -- again, we're willing to |
| 02:08 | 3 | accept an interrogatory answer that would tell us what |
| 02:08 | 4 | those payments were.  And then that would exclude if |
| 02:08 | 5 | it's part of a privilege document, for example. |
| 02:08 | 6 | THE COURT:  Response? |
| 02:08 | 7 | MR. WHITEHURST:  Yes, Your Honor.  Just a |
| 02:08 | 8 | second.  I believe, Mr. Lang, there you go. |
| 02:08 | 9 | I feel like this is déjà vu all over |
| 02:08 | 10 | again because we've dealt with a very similar situation |
| 02:08 | 11 | back in the August 2nd discovery hearing. |
| 02:08 | 12 | There Micron was trying to get discovery |
| 02:08 | 13 | into monetization of certain patents.  Actually, it was |
| 02:09 | 14 | monetization of the asserted patents.  Here, we're even |
| 02:09 | 15 | further removed. |
| 02:09 | 16 | We're dealing with a situation where it's |
| 02:09 | 17 | not monetization of the asserted patents but unasserted |
| 02:09 | 18 | patents.  And my hands are tied here because they're |
| 02:09 | 19 | really trying to get discovery into a privileged |
| 02:09 | 20 | document that I can't discuss here. |
| 02:09 | 21 | We're not waiving privilege.  We can't go |
| 02:09 | 22 | there.  We can't produce the document.  We're talking |
| 02:09 | 23 | about something that's unrelated.  They're trying to |
| 02:09 | 24 | get behind the curtain, see what happened in a |
| 02:09 | 25 | privileged arrangement by trying to get to the -- these |

02:09   1   payments.

02:09   2                    But there was -- this is not a situation

02:09   3   where they're asking for licenses.  We're talking

02:09   4   about, number one, Greenthread.  It's not a party to

02:09   5   this litigation.  It's a separate company.

02:09   6                    This Greenthread-Si Flash agreement that

02:10   7   they want discovery into does not involve the asserted

02:10   8   patents, as counsel has already mentioned.  It's a

02:10   9   privileged agreement between Greenthread and an

02:10   10  attorney.

02:10   11                   And the Court has consistently said --

02:10   12  and this is something that we've followed throughout

02:10   13  this case.  The Court has only required the production

02:10   14  of executed licenses.

02:10   15                   And you'll see here that when Micron

02:10   16  argued at the previous hearing that they wanted

02:10   17  discovery into the monetization of the asserted

02:10   18  patents -- here we're talking about monetization of

02:10   19  unasserted patents -- you said, well, that's all in my

02:10   20  court I require people to produce, these executed

02:10   21  licenses.

02:10   22                   That's what we've understood the rule of

02:10   23  the game, the rule of the Court to be, and we followed

02:10   24  that.

02:10   25                   So Greenthread is not aware of any

02:10  1    licenses by Si-Flash.  And the patents -- it's even

02:10  2    further removed now.  The patents have since been

02:10  3    assigned to this other entity, Flash Control.

02:10  4              So when the Court previously dealt with

02:10  5    this issue on monetization of the asserted patents --

02:11  6    my apologies -- the Court said that it doesn't require

02:11  7    production of documents related to prior monetization

02:11  8    efforts, just the executed licenses.

02:11  9              Here, we're talking about a third party

02:11  10   and unasserted patents.  So we don't believe there's

02:11  11   any precedent for providing this requested information

02:11  12   that goes to a privileged relationship between a third

02:11  13   party and counsel.

02:11  14             THE COURT:  Help me here.  I'm not -- I'm

02:11  15   not understanding why this is privileged.  The -- I'm

02:11  16   not understanding why the information that Micron is

02:11  17   seeking here, that -- just that information, is

02:12  18   privileged.

02:12  19             It seems to me it's an amount, and so I

02:12  20   don't know why that would be privileged.

02:12  21             MR. WHITEHURST:  That's correct, Your

02:12  22   Honor.  The amount itself, though, goes to what was

02:12  23   monetization of unasserted patents.  It's not the

02:12  24   license agreement itself.

02:12  25             It was a strange relationship that I

| | | |
|---|---|---|
| 02:12 | 1 | can't go into because of the privileged nature, but |
| 02:12 | 2 | we're not talking about a license agreement.  There's |
| 02:12 | 3 | nothing here that's going to show what the parties |
| 02:12 | 4 | would have paid at a hypothetical negotiation. |
| 02:12 | 5 | It was a weird arrangement, a privileged |
| 02:12 | 6 | relationship that did result in a payment.  But the |
| 02:12 | 7 | nature of that and the payment would be revealing the |
| 02:12 | 8 | substance, the privileged relationship, and it's not |
| 02:12 | 9 | going to a license or something that we would actually |
| 02:12 | 10 | use in a Georgia-Pacific reasonable royalty |
| 02:12 | 11 | calculation. |
| 02:12 | 12 | THE COURT:  Let me hear a response. |
| 02:12 | 13 | MR. LANG:  Your Honor, I think you hit it |
| 02:13 | 14 | on the head.  The amount cannot be privileged.  And |
| 02:13 | 15 | whether it was a weird relationship or not, in |
| 02:13 | 16 | Mr. Whitehurst's words, we're entitled to assess how |
| 02:13 | 17 | that affects damages. |
| 02:13 | 18 | The main point that Mr. Whitehurst fell |
| 02:13 | 19 | back on after realizing it's not privileged is that |
| 02:13 | 20 | these are unasserted patents. |
| 02:13 | 21 | We -- there's got to be 40 licenses |
| 02:13 | 22 | produced in this case on unasserted patents, Round |
| 02:13 | 23 | Rock, Lexar, go on.  These patents are the same subject |
| 02:13 | 24 | matter.  We just want to know what these payments were |
| 02:13 | 25 | for, how much were they. |

02:13  1          And again, Your Honor, we would be open

02:13  2   to handling this in the same way.  An interrogatory

02:13  3   response should obviate the privilege issues of the

02:13  4   documents Mr. Whitehurst is referring to.

02:13  5          MR. WHITEHURST:  But, Your Honor, a

02:13  6   single payment is not going to show what a party would

02:14  7   have paid in a hypothetical license negotiation.  So

02:14  8   I'm struggling to see how there's any relevance at all

02:14  9   to the Georgia-Pacific factors.

02:14  10          You know, if we were talking about an

02:14  11  executed license agreement or something of that nature,

02:14  12  it would be a completely different case, but here

02:14  13  they're trying to inquire into a single payment for

02:14  14  unasserted patents outside of the scope of a license

02:14  15  agreement.

02:14  16          That's really stretching the realm of

02:14  17  relevancy.  And it's something that, you know, we

02:14  18  always understood to be out of bounds.  And to know --

02:14  19  if they were asking for the production of a license

02:14  20  agreement or something, we would have certainly

02:14  21  complied with that request, but that's not what they're

02:14  22  asking for here.

02:15  23          (Clarification by Reporter.)

02:15  24          MR. FRENKEL:  Okay.  Sorry.

02:15  25          You know, we weren't involved in the

| | | |
|---|---|---|
| 02:15 | 1 | earlier fight between Micron and Vervain, but it seems |
| 02:15 | 2 | to me that getting the information about what the -- |
| 02:15 | 3 | what Greenthread got for transferring these patents to |
| 02:15 | 4 | Si-Flash and any information about what percentage they |
| 02:15 | 5 | would get in the future, you know, is probative in |
| 02:15 | 6 | discovery. |
| 02:15 | 7 | I mean, we may or may not use it in |
| 02:15 | 8 | expert reports, but we can't decide that until we see |
| 02:15 | 9 | it.  You know, it seems like the arguments that counsel |
| 02:15 | 10 | for Vervain are making are more directed towards |
| 02:15 | 11 | Daubert or motions in limine and not for discovery. |
| 02:15 | 12 | MR. WHITEHURST:  Well, again, Your Honor, |
| 02:15 | 13 | we believe, you know, just like the Court has |
| 02:15 | 14 | consistently held that funding agreements, contingency |
| 02:15 | 15 | retention agreements, we're talking here about a |
| 02:15 | 16 | privileged relationship.  And they're trying to peer |
| 02:15 | 17 | behind the curtain, and that's a very dangerous |
| 02:15 | 18 | situation. |
| 02:15 | 19 | You know, we understand privilege to be |
| 02:16 | 20 | something that, you know, if we had decided to waive, |
| 02:16 | 21 | that'd be one thing, but we've been very consistent in |
| 02:16 | 22 | this litigation with what we view to be privileged. |
| 02:16 | 23 | And they're trying to get to the nature of that |
| 02:16 | 24 | privileged relationship. |
| 02:16 | 25 | And again, we don't believe that they've |

—36—

02:16  1    established anything showing that it's relevant to

02:16  2    Georgia-Pacific or the reasonable royalty rate.

02:16  3    They're just trying to look where they're not permitted

02:16  4    to look.

02:16  5                    MR. LANG:  Your Honor, if I may, maybe

02:16  6    there's a middle-ground first step here, and this

02:16  7    agreement is with the same inventor, the sole -- he's

02:16  8    the sole inventor on both patents.  So we think it's

02:16  9    highly relative to what he would be thinking at the

02:16  10   hypothetical negotiation.

02:16  11                   If you would, maybe you can put the onus

02:16  12   on Micron and Vervain to craft an interrogatory

02:16  13   response that seeks, for example, the, you know, the

02:16  14   payments, which can't be privileged.  And we can get

02:17  15   their response and deal with it if we think that they

02:17  16   are over-applying, you know, the privilege brush, so to

02:17  17   speak.

02:17  18                   THE COURT:  Anything else from anyone?

02:17  19                   Okay.  I'll be back in a second.

02:17  20                   (Pause in proceedings.)

02:17  21                   THE COURT:  If we could go back on the

02:17  22   record.

02:17  23                   The last suggestion I think was a good

02:17  24   one, and I will take it.  So how quickly do you think

02:17  25   you can get an interrogatory to Mr. Whitehurst?

02:17    1                        MR. LANG:  Mr. Frenkel, I think we could

02:17    2    probably put our heads together and get that done by

02:17    3    Friday, right?

02:17    4                        MR. FRENKEL:  Yes.  Definitely.

02:17    5                        THE COURT:  Okay.  Then I would assume,

02:17    6    Mr. Whitehurst, you could relatively quickly get the

02:18    7    interrogatory answered?

02:18    8                        MR. WHITEHURST:  Yes, Your Honor.

02:18    9    Assuming there are no privilege issues.  Yes, Your

02:18    10   Honor.

02:18    11                       THE COURT:  Okay.  Well, let me just say

02:18    12   that if it's asking for the amount, I would not find

02:18    13   that to be privileged.  So if that helps guide the

02:18    14   drafters of the interrogatory.

02:18    15                       Anything else we need to take up,

02:18    16   Mr. Whitehurst?

02:18    17                       MR. WHITEHURST:  No, Your Honor.  Thank

02:18    18   you.  Thank you for your time.  I'm always nervous when

02:18    19   I'm keeping a district judge from his Thanksgiving

02:18    20   holiday.

02:18    21                       THE COURT:  Well, fortunately, it doesn't

02:18    22   happen all that often.  So I have a feeling that many

02:18    23   of my brethren started this holiday last Friday.

02:18    24   That's probably what I should have done as well.

02:18    25                       MR. WHITEHURST:  I think that's a safe

02:18   1    assumption.

02:18   2                    THE COURT:   The fault here is mine for

02:18   3    not planning my vacation better.

02:18   4                    So you guys have a wonderful

02:18   5    Thanksgiving, and I hope to see y'all soon in person.

02:18   6    Take care.

02:18   7                    (Hearing adjourned.)

         8

         9

        10

        11

        12

        13

        14

        15

        16

        17

        18

        19

        20

        21

        22

        23

        24

        25

1    UNITED STATES DISTRICT COURT )

2    WESTERN DISTRICT OF TEXAS      )

3

4

5                 I, Kristie M. Davis, Official Court

6    Reporter for the United States District Court, Western

7    District of Texas, do certify that the foregoing is a

8    correct transcript from the record of proceedings in

9    the above-entitled matter.

10                I certify that the transcript fees and

11   format comply with those prescribed by the Court and

12   Judicial Conference of the United States.

13                Certified to by me this 26th day of

14   November 2022.

15
                              */s/ Kristie M. Davis*
16                            KRISTIE M. DAVIS
                              Official Court Reporter
17                            800 Franklin Avenue
                              Waco, Texas 76701
18                            (254) 340-6114
02:18                         kmdaviscsr@yahoo.com
19

20

21

22

23

24

25